**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

NICOLE HOOPMAN and
DONNIE GIBSON,[1] on behalf of themselves
and all other similarly situated,

Plaintiffs,

v. Case No: 3:26-cv-00997-wmc

DULUTH HOLDINGS, INC. a
Wisconsin Corporation, d/b/a
DULUTH TRADING CO.

Defendant.

---

**FIRST AMENDED CLASS ACTION COMPLAINT**
**JURY TRIAL DEMANDED**

---

Plaintiffs Nicole Hoopman and Donnie Gibson, (collectively, "Plaintiffs"), individually and on behalf of all other persons similarly situated, file this First Amended Class Action Complaint as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1)(B), and make the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and Plaintiffs' counsel, which are based on personal knowledge:

---

[1] Sam Hoheisel, a named plaintiff in the original Complaint, is not a party to this First Amended Complaint. His individual claims are withdrawn without prejudice, pending Plaintiff's motion to voluntarily dismiss

## NATURE OF ACTION

1. This is a class action brought by Plaintiffs, individually and on behalf of all others similarly situated (collectively referred to as "Class Members" or the "Class"), against Duluth Holdings Inc. ("Duluth" or "Defendant"), a clothing retailer.

2. Plaintiffs generally allege that Duluth violates Wisconsin and California law by participating in the unlawful, unfair, and deceptive business practice of advertising false former prices and corresponding fictitious discounts in connection with the advertisement and sale of its merchandise.

3. As alleged herein, Defendant has misled consumers by advertising false former, original, or regular prices that were inflated, outdated, or not reflective of any bona fide prevailing market price, thereby creating illusory "savings" on merchandise sold through its e-commerce website, duluthtrading.com (the "Website").

4. False reference price-discounting occurs when a seller fabricates an inflated reference price at which it seldom, if ever, sells a product, while offering the product "on sale" at what appears to be a significantly discounted price. In reality, there is no discount or savings because the reference price significantly overstates the product's value, as the product is almost always sold at prices below the reference price. It is well established that false reference pricing violates state and federal law.

5. Defendant has engaged in its false-reference pricing scheme by displaying strike-through reference prices alongside lower "sale" prices. This conveys the impression of significant, time-limited discounts. In reality, many of these products were continuously offered at discounted prices for extended periods well in excess of 90 days. Through these practices, Defendant created

a false sense of urgency and savings, misleading consumers into believing they were obtaining genuine, limited-time deals when they were not.

6. Wisconsin law explicitly forbids these practices. Wis. Stat. § 100.20 and the rules governing price comparison advertising promulgated thereunder at Wis. Admin. Code ch. ATCP 124 provide that price comparisons based on arbitrary or inflated prices "can only serve to deceive or mislead" consumers and that the use of such comparisons "as an inducement to the sale of [merchandise] is injurious to both the consuming public and competitors, and is an unfair trade practice and unfair method of competition." ATCP 124.01.

7. Wisconsin law specifically prohibits a seller from advertising any price comparison based on a price other than one at which the seller actually sold the same merchandise in the 90 days immediately preceding the advertisement, or one at which the seller actually offered the merchandise for sale for at least 4 weeks during those 90 days. ATCP 124.04(1)(a) and 124.05(1)(a). While the statute permits alternative bases for price comparisons where sales or offers occurred during a different period, those alternatives require the seller to disclose in the advertisement the date, time, or seasonal period when the sales or offers were made. ATCP 124.04(1)(b) and 124.05(1)(b). Further, no price comparison may be based on a price that "exceeds the seller's cost plus the percentage markup regularly used by the seller in the actual sale of such property or services [...]. in the seller's recent and regular course of business." ATCP 124.04(2) and 124.05(2). Defendant made none of these required disclosures.

8. These same practices are also violative of California law. Through its false and misleading marketing, advertising, and pricing scheme, Defendant violated and continues to violate California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

9. Prices reflect both quality and value.[2] Empirical studies "suggest that consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."[3] Inflated reference prices can increase consumers' value perceptions, reduce their search intentions for lower prices, increase their purchase intentions, and reduce their purchase intentions for competing products.[4] Retailers like Defendant therefore use inflated reference prices to manipulate the public's perception of their merchandise, misleading consumers into overestimating a product's quality and value and leading them to believe they are getting a bargain and higher-quality product when buying at a "sale" price.

10. Consumers lack complete information about products and rely on information provided by sellers, including pricing information, to make purchase decisions. Reference prices appeal to consumers' desire for bargains or deals. Under the concept of "transaction utility," coined by Nobel Prize-winning economist Richard Thaler, consumers place value on the psychological experience of obtaining a product at a perceived bargain.[5] Consequently, retailers like Defendant,

---

[2] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 54-55 (1992) ("[P]rice is materially utilized in the formation of perceptions of the product's value and influences the decision to purchase the product or to continue to search for a lower price."); Patrick J. Kaufmann et al., *Deception in Retailer High-Low Pricing: A "Rule of Reason" Approach*, 70 J. Retailing 115, 118 (1994) ("[R]eference to a retailer's normal or regular price in retail sale price advertising provides the consumer with information used to determine perceived value"); Richard Thaler, *Mental Accounting and Consumer Choice*, 4 no. 3 Mktg. Sci. 199, 212 (1985) ("The [reference price] will be more successful as a reference price the less often the good is purchased. The [reference price] is most likely to serve as a proxy for quality when the consumer has trouble determining quality in other ways (such as by inspection)").

[3] Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, *An Investigation into the Effects of Advertised Reference Prices on the Price Consumers are Willing to Pay for the Product*. 6 no. 1 J. of Applied Bus. Rsch. 59, 66 (1990). Moreover, "if a higher reference price encourages consumers to pay a higher price for a product than the consumer was willing to pay for the identical product with a lower reference price, then the practice of using high reference prices would be deceptive." *Id*. at 60.

[4] Dhruv Grewal & Larry D. Compeau, *Pricing and Public Policy: A Research Agenda and an Overview of the Special Issue*, 18 no. 1 J. Pub. Pol'y & Mktg. 3, 7 (1999).

[5] See Richard Thaler, *Mental Accounting and Consumer Choice*, *supra* n. 1.

who understand that consumers are susceptible to bargain hunting, have a substantial financial interest in making consumers think they are getting a bargain, even when they are not. Contrary to the illusory bargains in Defendant's advertisements, consumers are not paying less than the true original, regular price, and therefore are not receiving more valuable goods at a discount. "[F]ictitious pricing can produce significant positive returns for [retailers, but also] lead[s] to consumer welfare loss."[6]

11. Plaintiffs seek all applicable damages, including, for Plaintiff Hoopman, double the amount of pecuniary loss suffered by Plaintiff Hoopman and the Wisconsin Class (defined below), together with costs and reasonable attorneys' fees under Wis. Stat. § 100.20(5) and such injunctive relief as the Court may award under its equitable powers, and, for Plaintiff Gibson and the California Class (defined below), restitution and injunctive relief under the UCL and the FAL.

12. Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who have purchased one or more items from Defendant's Website that were deceptively represented as discounted from false reference prices, in order to halt the dissemination of this false, misleading, and deceptive price scheme, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased Defendant's products.

## PARTIES

13. Plaintiff Nicole Hoopman resides in Oshkosh, Winnebago County, Wisconsin.

14. Plaintiff Donnie Gibson resides in Pittsburg, Contra Costa County, California.

15. Before making their purchases, Plaintiffs reviewed information about the items, including Defendant's representations that the items were being offered at a discounted sale price

---

[6] *Id.* at 827.

and understood the original prices as a representation and warranty by Defendant that the items were ordinarily offered at a higher price and had been recently sold or offered at that higher price. Plaintiffs relied on these false and misleading representations and warranties in their respective decisions to purchase the items and would not have purchased the items or paid as much had they known Defendant's representations were not true.

16. Defendant Duluth Holdings Inc. is a Wisconsin corporation headquartered at 201 East Front Street, Mount Horeb, WI 53572. Duluth operates under the Duluth Trading Company brand and owns and operates the duluthtrading.com Website. Duluth is a multi-channel retailer of casual wear, workwear, underwear, and related apparel and accessories for men and women. Duluth sells its products nationwide through its Website, company-owned retail stores, and print catalogs. Upon information and belief, Duluth-branded merchandise is sold only by Duluth, through its own Website, stores, and catalogs, and is not sold by other retailers. The prices at which Duluth actually sells its merchandise therefore establish the prevailing market price for that merchandise.

## JURISDICTION AND VENUE

17. Plaintiffs commenced this action in the Circuit Court for Dane County, Wisconsin, on August 14, 2026, case number 2026CV002647. On October 2, 2026, Defendant removed the action to this Court, invoking the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, and asserting that the proposed Classes include more than 100 members, that at least one member of the proposed Classes is a citizen of a State different from Defendant, and that the amount in controversy exceeds $5,000,000. (Dkt. 1.) Plaintiffs do not concede the accuracy of Defendant's jurisdictional allegations, particularly as to the amount in controversy, and reserve all rights with respect to the propriety of removal and remand.

18. Venue lies in this District under 28 U.S.C. § 1441(a) because this District embraces the Circuit Court for Dane County, where this action was pending when Defendant removed it. In addition, Defendant's principal place of business is located in Mount Horeb, Dane County, Wisconsin, within the Western District of Wisconsin, and a substantial part of the events giving rise to Plaintiffs' and other Class Members' claims occurred in this District. Specifically, upon information and belief, the deceptive pricing and advertising schemes alleged herein were created, approved, and executed by Defendant's corporate officers and marketing teams operating out of its Mount Horeb headquarters.

## FACTUAL ALLEGATIONS

### A. Defendant's Deceptive Sales Practices

19. Defendant is a multi-channel retailer of casual wear, workwear, underwear, and functional apparel for men and women. Despite marketing itself as a brand offering quality and value, Defendant has engaged in a false discount-pricing scheme that harms consumers by advertising its merchandise at discounted "sale" prices on its e-commerce Website.

20. The Website features a dedicated "Sale" section, where products are displayed with purported "original" or reference prices shown in strike-through next to lower "sale" prices, conveying the impression of significant, time-limited discounts. In this Complaint, "Reference Price" shall refer to the strike-through price displayed on the Website alongside the purported discounted price. Plaintiffs and reasonable consumers understand the Reference Price to be the former, original, or regular price of the item on which it appears, and to be a price at which that item was recently sold or offered.

21. At the top of Duluth's homepage, the site's header prominently displays multiple shopping categories, including Men, Women, Gear, New, and a dedicated "Sale" tab that is clearly

visible alongside the Company's core shopping categories, drawing immediate attention to discounted merchandise.

22. Clicking the "Sale" tab directs users to a dedicated sale landing page. The page provides immediate links allowing consumers to shop Men's or Women's sale assortments. Below the banner, the sale page displays a large catalog-style product grid comprising hundreds of items on sale. Consumers are presented with filtering and sorting tools, including filters by gender, product type, and other attributes, while individual product tiles prominently show reference prices alongside discounted prices or price ranges.

23. Based on their counsel's pre-suit investigation, Plaintiffs allege that the Reference Prices displayed on Defendant's sale merchandise are not prices at which that merchandise was sold or offered within the periods required by ATCP 124 and Cal. Bus. & Prof. Code § 17501, and that merchandise advertised at a discount from a Reference Price routinely remains at a discount for months at a time. Counsel conducted a systematic investigation of Defendant's pricing practices, including tracking 93 product listings, comprising 75 distinct products of which eleven were tracked in more than one colorway, from Defendant's website from September 4, 2025 through July 19, 2026. The listings were identified from Defendant's sale pages on September 4, 2025, and all but one were tracked from that date. Throughout the monitoring period, a full-page screenshot of each tracked product page was preserved on a daily basis, recording the Reference Price and the sale price displayed (where applicable); screenshots were preserved for 316 of the 319 days in the monitoring period, the only omissions being March 21 through 23, 2026. Every listing was tracked across a period of at least 13 consecutive weeks. For some listings the product page did not render a price on every day within that period, and the number of days on which a price was observed therefore varies by listing, from 26 days to 308 days; the median listing was observed on 264 days. A listing was recorded as "on sale" on a given date only if it was advertised

at a discount from the Reference Price; days on which the page did not render a price were excluded rather than counted as offers at the Reference Price, and a day on which the page displayed a single price equal to the Reference Price was recorded as an offer at the Reference Price rather than as a sale.

24. The results were consistent: the tracked listings typically remained at a discount from the Reference Price for months at a time, and most were never once observed at the Reference Price while they were tracked. Fifty-eight of the 93 tracked listings were never observed at their Reference Price on any day of the monitoring period, let alone for four weeks within any 90-day period. Thirty-seven of those 58 were observed on 200 or more days each, with a median of 305 days observed. For each of those 58 listings, every advertisement made after the first 90 days of monitoring compared the sale price to a Reference Price at which the product had not been sold within the preceding 90 days, as ATCP 124.04(1)(a) requires, and at which it had not been offered for four weeks within the preceding 90 days, as ATCP 124.05(1)(a) requires. During the first 20 weeks of monitoring, 72 of the 92 listings being tracked from September 4, 2025 were advertised as “on sale” on every day on which a price was observed throughout a period of at least 91 consecutive calendar days, without any intervening observation at the Reference Price, and 66 of those were not observed at their Reference Price on any day during that 20-week period. The remaining 35 of the 93 listings were observed at their Reference Price on at least one day, for totals ranging from 3 days to 151 days. Of the 320 separate returns to a Reference Price observed across those listings, 201 lasted seven days or fewer.

25. Defendant uses inflated Reference Prices to induce consumers into making purchases under the reasonable, but incorrect, belief that the merchandise was previously offered and sold at the Reference Price in substantial quantities and for a substantial period of time, such

that the consumer is paying less than what other reasonable consumers previously paid for the same product.

26. Even if Defendant offered or sold some merchandise at a Reference Price at some point, that fact alone does not establish compliance with Wisconsin law. For a price comparison based on Defendant's own actual sales, ATCP 124.04(1)(a) requires that the Reference Price be a price at which the same property was actually sold by Defendant during the 90 days immediately preceding the advertisement. If Defendant relies on sales from another period, the advertisement must disclose, with the price comparison, the date, time, or seasonal period when those sales were made. ATCP 124.04(1)(b). For a price comparison based on a price at which Defendant offered, but did not sell, the merchandise, ATCP 124.05(1)(a) requires that the merchandise actually have been offered at that price for at least four weeks during the 90 days immediately preceding the advertisement. If Defendant relies on offers from another 90-day period, the advertisement must clearly disclose the date, time, or seasonal period of the offer. ATCP 124.05(1)(b).

27. Defendant's advertisements did not disclose that the Reference Prices were based on sales or offers from any period other than the 90 days immediately preceding the advertisements. Nor did Defendant disclose that the Reference Prices were future prices or competitor prices, as required for those forms of comparison under ATCP 124.06 and 124.07. Accordingly, reasonable consumers understood the Reference Prices to be Defendant's own bona fide former, original, or regular selling prices.

28. Similarly under California law, even if Defendant previously offered its merchandise at a Reference Price for some brief period of time, that limited offering would not mean Defendant complied with relevant law. To the contrary, the laws of California require that a Reference Price be the "prevailing" price over the three-month period preceding the advertisement. See Cal. Bus. & Prof. Code § 17501; see also 16 C.F.R. § 233.1(a) (requiring that a former price

comparison be the "price at which the article was offered to the public on a regular basis for a reasonably substantial period of time").

29. Defendant's Reference Prices are displayed on the product page for each item and are presented as the former price of the item the consumer is purchasing, in whatever color or pattern the consumer selects. A Reference Price is not a bona fide former price of the item a consumer actually buys merely because Defendant may, at the same time, list a different color or pattern of the same style at the Reference Price. Nor does Defendant's practice of rotating discounts among the colors and patterns of a style, so that the style is never offered without at least some variants on sale, convert the Reference Price into a price at which the merchandise was actually sold or offered within the meaning of ATCP 124, or into a prevailing market price within the meaning of Cal. Bus. & Prof. Code § 17501. Neither ATCP 124 nor § 17501 contains any exception for merchandise that Defendant chooses to label as "clearance."

**B. Defendant's False Price-Discounting Scheme Harms All Consumers**

30. As described above, false Reference Prices shift the demand for Defendant's merchandise outward, leading to higher market prices. Because cost and demand conditions determine the market prices paid by all consumers, this price-premium impact is suffered uniformly by all of Defendant's customers, regardless of any individual consumer's particular beliefs or purchasing decision process. Plaintiffs and proposed Class members thus suffered a common injury from Defendant's misconduct.

31. The effectiveness of Defendant's scheme depends on consumers' inability to detect it. Consumers lack access to comprehensive pricing history that would reveal the deception. This information asymmetry allows the practice to continue unchallenged, as customers have no practical way to verify whether an advertised "sale" price is genuinely discounted from a bona fide former price.

### C. Defendant's False Price-Discounting Scheme Harmed Plaintiffs

32. Plaintiffs suffered economic injuries as a direct result of Defendant's illegal false price-discounting scheme.

#### i. Nicole Hoopman's Purchases

33. Plaintiff Hoopman has made multiple purchases on the Website, including a purchase of the "Men's DuluthFlex Fire Hose Standard Fit Cargo Work Pants" ("Cargo Pants"), Item number 53704, and the "Women's No-Yank Tank" ("Women's Tank"), Item number 73509 on May 8, 2026. Ms. Hoopman purchased the Cargo Pants (Acorn color) for a purported sale price of $47.18, down from a purported original price of $84.95. Ms. Hoopman purchased the Women's Tank (Dusk Blue Fall Hedgehog color) for a purported sale price of $8.78, down from a purported original price of $16.95.

34. Based on the advertised Reference Prices and sale prices, Plaintiff Hoopman believed the products she purchased were worth the higher value represented on the price display, and that she was receiving a genuine discount on the items she had chosen. Her belief that the discounted price on the items was limited and would not last was an integral factor in her purchase decision, and she would not have made the purchases, or would have paid less for the products, were it not for the representations of a higher value and the genuine bargain she thought she was receiving. The advertised Reference Prices and discounts were material representations to her, and she relied on them in making her purchase decisions.

35. On information and belief, the specific items Plaintiff Hoopman purchased were not offered at or near the advertised Reference Prices in the 90 days immediately preceding her purchase, nor had Defendant had offered those items for sale at the displayed Reference Prices for at least four weeks during that period. The basis for this allegation is set out below: archived captures of the product pages, Ms. Hoopman's own purchases, and counsel's review of the live

product pages show both items continuously advertised at a discount from the Reference Price for months before and after her purchase, and show that the Reference Price displayed to her on May 8, 2026 was higher than any price at which either item had been offered in any earlier capture. That is the same pattern documented in counsel's pre-filing investigation.

36. Defendant's product page for the Cargo Pants advertised the Cargo Pants at a discount from the Reference Price on every date for which Plaintiffs have pricing information, from December 16, 2025 through at least August 22, 2026, an eight-month period that brackets Ms. Hoopman's May 8, 2026 purchase. That information comes from three sources: archived copies of the product page preserved by the Internet Archive's Wayback Machine, which are identified in the accompanying footnotes; Ms. Hoopman's own purchase; and Plaintiffs' counsel's review of the live product page during the pre-suit investigation. In none of the captured instances was the Acorn colorway offered at or near the Reference Price, while during the period Defendant raised the Reference Price displayed from $84.50 to $84.95. The captures thus support the inference that Defendant's pricing of the Cargo Pants followed the same pattern identified in counsel's broader investigation. In particular:

a. December 16, 2025: the Cargo Pants (Acorn colorway) were advertised at a sale price of $59.15 against a Reference Price of $84.50;[7]

[7] *Men's DuluthFlex Fire Hose Standard Fit Cargo Work Pants*, Duluth Trading Co., https://www.duluthtrading.com/mens-duluthflex-fire-hose-standard-fit-cargo-work-pants-53704.html, *archived at* https://web.archive.org/web/20251216223825/https://www.duluthtrading.com/mens-duluthflex-fire-hose-standard-fit-cargo-work-pants-53704.html?srccode=PINT_PROS_GEN&ogmap=PDSOC%7CBRRTN%7CPIN%7CLAL%7CMULTI%7CSITEWIDE%7C%7C%7C%7C%7C%7CITX%3Fsrccode%3DPIN_SHP_TRF_LPV&ogmap=PDSOC%7CPIN%7CPIN%7CLAL%7CMULTI%7CSITEWIDE%7CO%2Fg_PDSOC_BRA_ACQ_PROSPECT_NONCONV_PIN_CTGS_DABA_LC_NoTt_NoTD_NoC%7C626752008839%7C2680080722678%7C%7Bproductid%7D%7C%7C4672924439438%7CDYN&pp=0 (Internet Archive capture of Dec. 16, 2025).

b. December 21, 2025: the Cargo Pants (Acorn colorway) were advertised at a sale price of $59.15 against a Reference Price of $84.50;[8]

c. January 22, 2026: the Cargo Pants (Acorn colorway) were advertised at a sale price of $58.97 against a Reference Price of $84.50;[9]

d. January 29, 2026: the Cargo Pants (Acorn colorway) were advertised at a sale price of $58.97 against a Reference Price of $84.50;[10]

e. February 16, 2026: the Cargo Pants (Acorn colorway) were advertised at a sale price of $58.97 against a Reference Price of $84.50;[11]

---

[8] *Men's DuluthFlex Fire Hose Standard Fit Cargo Work Pants*, Duluth Trading Co., https://www.duluthtrading.com/mens-duluthflex-fire-hose-standard-fit-cargo-work-pants-53704.html, *archived at* https://web.archive.org/web/20251221201641/https://www.duluthtrading.com/mens-duluthflex-fire-hose-standard-fit-cargo-work-pants-53704.html?srccode=PINT_PROS_GEN&ogmap=PDSOC%7CBRRTN%7CPIN%7CLAL%7CMULTI%7CSITEWIDE%7C%7C%7C%7C%7C%7CITX%3Fsrccode%3DPIN_SHP_TRF_LPV&ogmap=PDSOC%7CPIN%7CPIN%7CLAL%7CMULTI%7CSITEWIDE%7CO%2Fg_PDSOC_BRA_ACQ_PROSPECT_NONCONV_PIN_CTGS_DABA_LC_NoTt_NoTD_NoC%7C626752008839%7C2680080722678%7C%7Bproductid%7D%7C%7C4672924439438%7CDYN&pp=0 (Internet Archive capture of Dec. 21, 2025).

[9] *Men's DuluthFlex Fire Hose Standard Fit Cargo Work Pants*, Duluth Trading Co., https://www.duluthtrading.com/mens-duluthflex-fire-hose-standard-fit-cargo-work-pants-53704.html, *archived at* https://web.archive.org/web/20260122171733/https://www.duluthtrading.com/mens-duluthflex-fire-hose-standard-fit-cargo-work-pants-53704.html?color=BLK (Internet Archive capture of Jan. 22, 2026).

[10] *Men's DuluthFlex Fire Hose Standard Fit Cargo Work Pants*, Duluth Trading Co., https://www.duluthtrading.com/mens-duluthflex-fire-hose-standard-fit-cargo-work-pants-53704.html, *archived at* https://web.archive.org/web/20260129080549/https://www.duluthtrading.com/mens-duluthflex-fire-hose-standard-fit-cargo-work-pants-53704.html?srccode=PINT_PROS_GEN&ogmap=PDSOC%7CBRRTN%7CPIN%7CLAL%7CMULTI%7CSITEWIDE%7C%7C%7C%7C%7C%7CITX%3Fsrccode%3DPIN_SHP_TRF_LPV&ogmap=PDSOC%7CPIN%7CPIN%7CLAL%7CMULTI%7CSITEWIDE%7CO%2Fg_PDSOC_BRA_ACQ_PROSPECT_NONCONV_PIN_CTGS_DABA_LC_NoTt_NoTD_NoC%7C626752008839%7C2680080722678%7C%7Bproductid%7D%7C%7C4672924439438%7CDYN&pp=0 (Internet Archive capture of Jan. 29, 2026).

[11] *Men's DuluthFlex Fire Hose Standard Fit Cargo Work Pants*, Duluth Trading Co., https://www.duluthtrading.com/mens-duluthflex-fire-hose-standard-fit-cargo-work-pants-53704.html, *archived at* https://web.archive.org/web/20260216054922/https://www.duluthtrading.com/mens-duluthflex-fire-hose-standard-fit-cargo-work-pants-53704.html?srccode=PINT_PROS_GEN&ogmap=PDSOC%7CBRRTN%7CPIN%7CLAL%7CMULTI%7CSITEWIDE%7C%7C%7C%7C%7C%7CITX%3Fsrccode%3DPIN_SHP_TRF_LPV&ogmap=PDSOC%7CPIN%7CPIN%7CLAL%7CMULTI%7CSITEWIDE%7CO%2Fg_PDSOC_BRA_ACQ_PROSPECT_NONCONV_PIN_CTGS_DABA_LC_NoTt_NoTD_NoC%7C626752008839%7C2680080722678%7C%7Bproductid%7D%7C%7C4672924439438%7CDYN&pp=0 (Internet Archive capture of Feb. 16, 2026).

f. April 3, 2026: the Cargo Pants (Acorn colorway) were advertised at a sale price of $58.97 against a Reference Price of $84.50;[12]

g. May 8, 2026 (Ms. Hoopman's purchase): Ms. Hoopman purchased the Cargo Pants (Acorn colorway) for $47.18 against a Reference Price of $84.95;

h. May 28, 2026 (live product page, reviewed by Plaintiffs' counsel): the Cargo Pants (Acorn colorway) were advertised at a sale price of $58.97 against a Reference Price of $84.95;

i. July 21, 2026 (live product page, reviewed by Plaintiffs' counsel): the Cargo Pants (Acorn colorway) were advertised at a sale price of $58.97 against a Reference Price of $84.95;

j. August 4, 2026 (live product page, reviewed by Plaintiffs' counsel): the Cargo Pants (Acorn colorway) were advertised at a sale price of $58.97 against a Reference Price of $84.95; and

k. August 22, 2026: the Cargo Pants (Acorn colorway) were advertised at a sale price of $40.99 against a Reference Price of $84.95.[13]

37. Defendant's product page for the Women's Tank advertised the Women's Tank at a discount from the Reference Price on every date for which Plaintiffs have pricing information,

---

[12] *Men's DuluthFlex Fire Hose Standard Fit Cargo Work Pants*, Duluth Trading Co., https://www.duluthtrading.com/mens-duluthflex-fire-hose-standard-fit-cargo-work-pants-53704.html, *archived at* https://web.archive.org/web/20260403024605/https://www.duluthtrading.com/mens-duluthflex-fire-hose-standard-fit-cargo-work-pants-53704.html?srccode=GPSHPLIA&color=BLK&srccode=GPSDSHOP&ogmap=PLA%7CNB%7CGOOG%7C%7C%7C%7C%7C%7C%7C%7C20768012558%7C161222459928&gad_source=1&gad_campaignid=20768012558&gbraid=0AAAAAD_vbjfjdfQqmFZxw0uoFtItGgqSM&gclid=Cj0KCQjwp7jOBhDGARIsABe7C4ewoMPE5IXLC1EFM9dHzWljcfqzMpuU9e8SfB0YOIVXeGHM0t9RRfUaAj-1EALw_wcB (Internet Archive capture of Apr. 3, 2026).

[13] *Men's DuluthFlex Fire Hose Standard Fit Cargo Work Pants*, Duluth Trading Co., https://www.duluthtrading.com/mens-duluthflex-fire-hose-standard-fit-cargo-work-pants-53704.html, *archived at* https://web.archive.org/web/20260822044915/https://www.duluthtrading.com/mens-duluthflex-fire-hose-standard-fit-cargo-work-pants-53704.html?ev3=Home_BestSellers_Default&color=DEK (Internet Archive capture of Aug. 22, 2026).

from October 8, 2025 through at least July 27, 2026, a nine-month period that brackets Ms. Hoopman's May 8, 2026 purchase. That information comes from three sources: archived copies of the product page preserved by the Internet Archive's Wayback Machine, which are identified in the accompanying footnotes; Ms. Hoopman's own purchase; and Plaintiffs' counsel's review of the live product page during the pre-suit investigation. The Dusk Blue Fall Hedgehog colorway Ms. Hoopman purchased was not offered at the Reference Price in any of the captured instances, while during the period Defendant raised the Reference Price displayed from $16.50 to $16.95. The captures thus support the inference that Defendant's pricing of the Women's Tank followed the same pattern identified in counsel's broader investigation. In particular:

a. October 8, 2025: the Women's Tank (Dusk Blue Fall Hedgehog colorway) was advertised at a sale price of $13.20 against a Reference Price of $16.50;[14]

b. December 18, 2025: the Women's Tank (Dusk Blue Fall Hedgehog colorway) was listed on the women's tanks category page of Defendant's Website at a sale price of $11.55 against a Reference Price of $16.50;[15]

c. March 10, 2026: the Women's Tank (Dusk Blue Fall Hedgehog colorway) was listed on the women's tanks category page of Defendant's Website at a sale price of $10.97 against a Reference Price of $16.50;[16]

---

[14] *Women's No-Yank Tank*, Duluth Trading Co., https://www.duluthtrading.com/womens-no-yank-tank-73509.html, *archived at* https://web.archive.org/web/20251008012808/https://www.duluthtrading.com/womens-no-yank-tank-73509.html?dwvar_73509_color=RDK&cgid=womens-tops-tanks (Internet Archive capture of Oct. 8, 2025).

[15] *Women's Tanks* (category page listing the Women's No-Yank Tank), Duluth Trading Co., https://www.duluthtrading.com/women/tops/tanks/, *archived at* https://web.archive.org/web/20251218160639/https://www.duluthtrading.com/women/tops/tanks/ (Internet Archive capture of Dec. 18, 2025) (prices for colorway identified in archived page source code).

[16] *Women's Tanks* (category page listing the Women's No-Yank Tank), Duluth Trading Co., https://www.duluthtrading.com/women/tops/tanks/, *archived at* https://web.archive.org/web/20260310090319/https://www.duluthtrading.com/women/tops/tanks/?feature=wtop-gst2-wtanks (Internet Archive capture of Mar. 10, 2026) (prices for colorway identified in archived page source code).

d. March 15, 2026: the Women's Tank (Dusk Blue Fall Hedgehog colorway) was listed on the women's tanks category page of Defendant's Website at a sale price of $10.97 against a Reference Price of $16.50;[17]

e. April 11, 2026: the Women's Tank (Dusk Blue Fall Hedgehog colorway) was advertised at a sale price of $8.78 against a Reference Price of $16.50;[18]

f. May 8, 2026: Ms. Hoopman purchased the Women's Tank (Dusk Blue Fall Hedgehog colorway) for $8.78 against a Reference Price of $16.95;

g. July 6, 2026: the Women's Tank (Dusk Blue Fall Hedgehog colorway) was listed on the women's tanks category page of Defendant's Website at a sale price of $10.97 against a Reference Price of $16.95;[19] and

h. July 21, 2026 (live product page, reviewed by Plaintiffs' counsel): the Women's Tank (Dusk Blue Fall Hedgehog colorway) was advertised at a sale price of $10.97 against a Reference Price of $16.95.

i. July 27, 2026 (live product page, reviewed by Plaintiffs' counsel): the Women's Tank (Dusk Blue Fall Hedgehog colorway) was advertised at a sale price of $8.78 against a Reference Price of $16.95.

38. Although the information reflects only selected captures at various points in time, they consistently show that the products purchased by Plaintiff Hoopman were not offered at the

---

[17] *Women's Tanks* (category page listing the Women's No-Yank Tank), Duluth Trading Co., https://www.duluthtrading.com/women/tops/tanks/, *archived at* https://web.archive.org/web/20260315082143/https://www.duluthtrading.com/women/tops/tanks/ (Internet Archive capture of Mar. 15, 2026) (prices for colorway identified in archived page source code).

[18] *Women's No-Yank Tank*, Duluth Trading Co., https://www.duluthtrading.com/womens-no-yank-tank-73509.html, *archived at* https://web.archive.org/web/20260411021636/https://www.duluthtrading.com/s/DTC/womens-no-yank-tank-73509.html?color=DIM (Internet Archive capture of Apr. 11, 2026).

[19] *Women's Tanks* (category page listing the Women's No-Yank Tank), Duluth Trading Co., https://www.duluthtrading.com/women/tops/tanks/, *archived at* https://web.archive.org/web/20260706021906/https://www.duluthtrading.com/women/tops/tanks/ (Internet Archive capture of July 6, 2026) (prices for colorway identified in archived page source code).

purported higher Reference Prices and, instead, support the inference that Defendant's pricing of these products followed the same scheme and pattern of practice identified in Plaintiffs' counsel's broader investigation.

**ii. Donnie Gibson's purchases**

39. Plaintiff Gibson has made multiple purchases on the Website, including a purchase of the "Men's Buck Naked Pattern Boxer Briefs" ("Men's Buck Boxers") in three different color variants ("Lucky Buck," "Picnic on the 4th," and "Workwear Ducks") on April 26, 2025. This product has an Item number of 76715. Mr. Gibson purchased the Men's Buck Boxers for a purported sale price of $13.97, down from a purported Reference Price of $19.50.

40. Based on the advertised Reference Prices and sale prices, Plaintiff believed the products he purchased were worth the higher value represented on the price display, and that he was receiving a genuine discount on the items he had chosen. His belief that the discounted price on the items was limited and would not last was an integral factor in his purchase decision, and he would not have made the purchases, or would have paid less for the products, were it not for the representations of a higher value and the genuine bargain he thought he was receiving. The advertised Reference Prices and discounts were material representations to him, and he relied on them in making his purchase decisions.

41. On information and belief, the Reference Price displayed to Mr. Gibson was not the prevailing market price of the Men's Buck Boxers, in the colorways he purchased, during the three months preceding his purchase, and Defendant had not sold those colorways at that price for any substantial period. The basis for that belief is set out below: archived captures of the product page show the Men's Buck Boxers advertised at a discount from the Reference Price on "every capture of the product page in the period surrounding Mr. Gibson's purchase, and counsel's review of the live page in July and August 2026, shows the item on sale; the colorways Mr. Gibson

purchased have since been withdrawn; and the same pattern was documented in counsel's pre-filing investigation.

42. Defendant's product page for the Men's Buck Boxers (Item 76715) advertised the Men's Buck Boxers at a discount from the Reference Price on every date for which Plaintiffs have pricing information, from February 14, 2025 through April 30, 2025, a period that brackets his April 26, 2025 purchase. That information comes from three sources: archived copies of the product page preserved by the Internet Archive's Wayback Machine, which are identified in the accompanying footnotes; Mr. Gibson's own purchase; and Plaintiffs' counsel's review of the live product page during the pre-suit investigation. On many of these dates the page also listed other colorways at the Reference Price, and the colorways advertised at a discount, and the size of the discount, varied from date to date. The set of colorways offered also changed frequently, with colorways added to and removed from the product page between captures taken only weeks apart. In particular:

a. February 14, 2025: colorways of the Men's Buck Boxers were advertised at sale prices of $12.00 and $6.50 against a Reference Price of $19.50;[20]

b. February 23, 2025: colorways of the Men's Buck Boxers were advertised at the sale price of $6.50 against a Reference Price of $19.50;[21]

---

[20] *Men's Buck Naked Pattern Boxer Briefs*, Duluth Trading Co., https://www.duluthtrading.com/s/DTC/mens-buck-naked-pattern-boxer-briefs-76715.html, *archived at* https://web.archive.org/web/20250214134846/https://www.duluthtrading.com/s/DTC/mens-buck-naked-pattern-boxer-briefs-76715.html?color=DRF (Internet Archive capture of Feb. 14, 2025).

[21] *Men's Buck Naked Pattern Boxer Briefs*, Duluth Trading Co., https://www.duluthtrading.com/s/DTC/mens-buck-naked-pattern-boxer-briefs-76715.html, *archived at* https://web.archive.org/web/20250223185351/https://www.duluthtrading.com/s/DTC/mens-buck-naked-pattern-boxer-briefs-76715.html?color=LSR (Internet Archive capture of Feb. 23, 2025).

c. March 24, 2025: a colorway of the Men's Buck Boxers was advertised at the sale price of $13.99 against a Reference Price of $19.50;[22]

d. April 24, 2025: colorways of the Men's Buck Boxers were advertised at sale prices of $13.97, $9.09, and $8.39 against a Reference Price of $19.50;[23]

e. April 26, 2025 (Mr. Gibson's purchase): Mr. Gibson purchased the Men's Buck Boxers in three colorways (Lucky Buck, Picnic on the 4th, and Workwear Ducks) for $13.97 against a Reference Price of $19.50;

f. April 30, 2025: colorways of the Men's Buck Boxers were advertised at the sale price of $13.97 against a Reference Price of $19.50;[24]

43. When Plaintiffs' counsel reviewed the live product page on July 27, 2026 and again on August 4, 2026, colorways of the Men's Buck Boxers were advertised at sale prices of $19.96 and $13.58 against a Reference Price of $24.95. The Reference Price had thus been raised from $19.50 to $24.95 while the item continued to be advertised at a discount, and the colorways Mr. Gibson purchased were no longer offered.

44. Although the archived captures reflect only the dates on which the Internet Archive happened to preserve the page, they consistently show at least one colorway of the Men's Buck Boxers advertised at a discount from the Reference Price on every date captured in the period surrounding Mr. Gibson's purchase, and counsel's review of the live page fifteen months later

---

[22] *Men's Buck Naked Pattern Boxer Briefs*, Duluth Trading Co., https://www.duluthtrading.com/s/DTC/mens-buck-naked-pattern-boxer-briefs-76715.html, *archived at* https://web.archive.org/web/20250324060322/https://www.duluthtrading.com/s/DTC/mens-buck-naked-pattern-boxer-briefs-76715.html?color=DRF (Internet Archive capture of Mar. 24, 2025).

[23] *Men's Buck Naked Pattern Boxer Briefs*, Duluth Trading Co., https://www.duluthtrading.com/s/DTC/mens-buck-naked-pattern-boxer-briefs-76715.html, *archived at* https://web.archive.org/web/20250424105216/https://www.duluthtrading.com/s/DTC/mens-buck-naked-pattern-boxer-briefs-76715.html?color=TEE (Internet Archive capture of Apr. 24, 2025).

[24] *Men's Buck Naked Pattern Boxer Briefs*, Duluth Trading Co., https://www.duluthtrading.com/s/DTC/mens-buck-naked-pattern-boxer-briefs-76715.html, *archived at* https://web.archive.org/web/20250430185304/https://www.duluthtrading.com/s/DTC/mens-buck-naked-pattern-boxer-briefs-76715.html?color=BXV (Internet Archive capture of Apr. 30, 2025).

showed the same. Together with the frequent addition and withdrawal of colorways described above, the captures support the inference that Defendant's pricing of the colorways Mr. Gibson purchased followed the same pattern identified in counsel's broader investigation.

45. Defendant's Reference Prices for the Men's Buck Boxers behave in a manner that is inconsistent with their being bona fide former prices. At no point captured did the product page for the Men's Buck Boxers appear without at least one colorway advertised at a discount from a strike-through Reference Price. The colorways on sale changed from date to date, and colorways were frequently added to and removed from the page. By keeping a rotating subset of colorways listed at the Reference Price while continuously advertising colorways at a discount from a strike-through Reference Price, and by continually introducing new colorways and retiring others, Defendant creates the appearance that the Reference Price is the regular selling price of the Men's Buck Boxers for all colorways, and that each discounted colorway was formerly sold at that price for a substantial period. A price at which a colorway is listed is not a price at which it is sold, and a colorway that is introduced, marked down, and withdrawn within a short period has not been sold or offered at the Reference Price for any substantial period, yet the strike-through Reference Price displayed on it tells consumers that it was. Plaintiff so alleges because every capture of the product page over the ten weeks captured surrounding his purchase described above shows the item on sale; because the sale prices, rather than the Reference Price, are the prices at which Defendant consistently moved the merchandise; because colorways cycled on and off the page while the item remained available throughout; and because Defendant raised the Reference Price from $19.50 to $24.95 between April 2025 and July 2026. Which colorways were sold at the Reference Price, in what quantities, for how long, and when, is information exclusively within Defendant's possession.

**iii. Defendant's Scheme Harmed Purchasers**

46. Plaintiffs and Class members suffered pecuniary loss because of Defendant's false Reference Prices. Each Plaintiff paid the advertised sale price because of the Reference Price displayed alongside it: the Reference Price, and the discount it implied, were the reason each Plaintiff bought the item at that price. Plaintiffs' loss can be measured in each of the following ways. First, each Plaintiff was induced by an unlawful price comparison to pay money for merchandise that he or she would not otherwise have purchased at that price, and the amount so paid, less at most the value actually received, is a pecuniary loss. Second, each Plaintiff did not receive the benefit of the bargain Defendant offered: Ms. Hoopman, for example, bargained for Cargo Pants that Defendant represented had been sold at $84.95 and were worth that amount, and received merchandise that Defendant had not sold at that price and whose value did not exceed the $47.18 she paid. Third, Defendant's false Reference Prices inflated consumer demand for its products, which permitted Defendant to charge, and caused Plaintiffs and Class members to pay, sale prices higher than those that would have prevailed absent the deception; the true market value of the Cargo Pants on May 8, 2026 was less than the $47.18 Ms. Hoopman paid, and the true market value of the Men's Buck Boxers on April 26, 2025 was less than the $13.97 Mr. Gibson paid. The amount of that price premium can be determined through common proof, including accepted economic methods such as conjoint or hedonic regression analysis applied to Defendant's internal sales data, which is exclusively within Defendant's possession and will be sought in discovery.[25] Wisconsin Plaintiff is entitled to recover twice the amount of her pecuniary loss under Wis. Stat. § 100.20(5).

---

[25] The most accurate evidence for calculating price-premium damages will be Defendant's own internal sales data, which remains exclusively within Defendant's possession and which Plaintiffs will seek in discovery. Plaintiffs reserve the right to refine the applicable measure of damages following discovery.

## D. Plaintiffs Face a Threat of Future Recurring Harm and Lack an Adequate Remedy at Law

47. Plaintiffs are regular customers of Duluth and intend to remain so because they like the clothing available on Duluth's Website. Ms. Hoopman has purchased from Duluth since 2012 and Mr. Gibson since 2021, and each has made multiple purchases from the Website, including purchases of merchandise advertised in the "Sale" section at a discount from a Reference Price. Plaintiffs desire to continue purchasing additional items from Duluth in the future, including the kinds of items they have bought from Duluth before: work pants and women's casual apparel in Ms. Hoopman's case, and men's boxer briefs and other underwear in Mr. Gibson's case. Each Plaintiff intends to make such purchases from Duluth within the next twelve months. However, Plaintiffs are unable to discern which Reference Prices are inflated and untrue from truthful Reference Prices. Plaintiffs may again, by mistake, purchase products with false Reference Prices and discounts in the future based on the reasonable, but incorrect, impression that the advertised Reference Prices are honest, accurate, and bona fide. Plaintiffs have no reasonable means to determine in the future whether Duluth is continuing to use false Reference Prices and discounts, or whether it has ceased this deceptive practice, and are therefore susceptible to recurring harm in the immediate future.

48. Plaintiffs' future injury also does not depend on their being deceived again. As alleged above, Defendant's false Reference Prices inflate demand for its merchandise and therefore the sale prices Defendant is able to charge all of its customers. For as long as the practice continues, Plaintiffs will pay those inflated prices on their future purchases whether or not they personally credit the Reference Price displayed, an injury that their awareness of Defendant's practice cannot avoid and that only an injunction can prevent.

49. Absent an equitable injunction enjoining Defendant from implementing an unlawful false price-discounting scheme, Plaintiffs, members of the putative Class, and the general public will be irreparably harmed and denied an effective and complete remedy because of the real and tangible threat of future harm emanating from Defendant's ongoing and deceptive conduct that cannot be remedied with monetary damages. Accordingly, Plaintiffs, members of the putative Class, and the general public lack an adequate remedy at law, and an injunction is the only form of relief that will guarantee them appropriate redress and assurances.

50. Defendant knows or should reasonably know that its Reference Price advertising is deceptive, misleading, and unlawful under Wisconsin and California law. Defendant failed to disclose to Plaintiffs and other members of the Class the truth about its advertised discount prices and former Reference Prices. At all relevant times, Defendant has been under a duty to Plaintiffs and the Class to disclose the truth about its Reference Prices and false discounts. The facts which Defendant misrepresented or failed to disclose are material facts that a reasonable person would have considered material, i.e., facts which would contribute to a reasonable person's decision to purchase Defendant's merchandise.

## CLASS ACTION ALLEGATIONS

51. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and (c)(4), individually and on behalf of all others similarly situated. The proposed classes (collectively, the Class) that Plaintiffs seek to represent are defined as follows:

> **Wisconsin Class:** All persons who, while in Wisconsin, at any time from three years before filing through the date of judgment (the "Class Period"), purchased from Defendant's Website one or more products at a discount from an advertised Reference Price and who have not received a refund or credit for their purchase(s).
>
> **California Class:** All persons who, within the State of California and within the applicable statute of limitations preceding the filing of this action,

> purchased from Defendant's Website one or more products at a discount from an advertised Reference Price and who have not received a refund or credit for their purchase(s).

52. Excluded from the Class are Defendant, as well as its officers, employees, agents or affiliates, parent companies and/or subsidiaries, and each of their respective officers, employees, agents or affiliates, and any judge who presides over this action. Plaintiffs reserve the right to expand, limit, modify, or amend these Class definitions, including the addition of one or more classes or subclasses, in connection with their motion for Class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery. Plaintiffs reserve the right to modify, change, or expand the Class definition based upon discovery and further investigation.

53. *Numerosity*: The Class members are so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe that the proposed Class contains, at least, hundreds of thousands of individuals who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiffs, but a reasonable estimate can be made based on Defendant's internal records, including records related to its loyalty program.

54. *Commonality and Predominance*: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether, during the Class Period, Defendant used falsely advertised Reference Prices on its price tags and promotional materials on its website;

(b) whether Defendant ever offered items for sale or sold items at their advertised Reference Price and, if so, for how long;

(c) whether, during the Class Period, any of the Reference Prices advertised were prices at which the products were actually sold or offered for sale during the 90 days immediately preceding the advertisements;

(d) Whether Defendant's advertised sale prices and/or percentage-off discounts reflect any actual discounts or savings;

(e) whether Defendant made false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions;

(f) whether Defendant made any of the disclosures required under ATCP 124.04(1)(b), 124.05(1)(b), 124.06, or 124.07 for price comparisons based on alternative benchmarks, including competitor prices, manufacturer-suggested prices, or prices from a period other than the 90 days immediately preceding the advertisement;

(g) whether Defendant's alleged conduct constitutes violations of Wis. Stat. § 100.20 and ATCP 124;

(h) whether Defendant engaged in unfair trade practices under the laws asserted;

(i) whether Plaintiffs and Class members are entitled to actual damages and/or restitution and the proper measure of damages and/or restitution;

(j) whether an injunction is necessary to prevent Defendant from continuing to use false, misleading, or illegal price comparisons.

(k) whether Defendant's Reference Prices exceed Defendant's cost plus the percentage markup regularly used by Defendant in the actual sale of such merchandise, in violation of ATCP 124.04(2) and 124.05(2); and

(l) whether Defendant's Reference Prices were the prevailing market prices of the merchandise within the three months preceding the advertisements, within the meaning of Cal. Bus. & Prof. Code § 17501.

55. *Typicality*: Plaintiffs' claims are typical of the claims of the Class members because, *inter alia*, all Class members have been deceived (or were likely to be deceived) by Defendant's false and deceptive price advertising scheme, as alleged herein. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all Class members.

56. *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the Class members. Plaintiffs retained well-funded counsel experienced in complex consumer class action litigation, including class actions based on allegations of false price-discounting schemes, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no antagonistic or adverse interests to those of the Class.

57. *Superiority*: The nature of this action and the nature of laws available to Plaintiffs and the Class members make the use of the class action format a particularly efficient and appropriate procedure to afford relief to themselves and the Class for the wrongs alleged. The damages or other financial detriment suffered by individual Class members are relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims

against Defendant. It would thus be virtually impossible for Plaintiffs and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Defendant will be permitted to retain the proceeds of its unlawful and deceptive practices. Moreover, prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications and would lead to the repetitious trials of the numerous common and predominant questions of fact and law, which could lead to the establishment of incompatible standards of conduct for Defendant. Such individual adjudications would be, as a practical matter, dispositive of the interests of, or would substantially impair or impede the interests of other Class Members. By contrast, the class action device presents far fewer management difficulties and the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Plaintiffs are not aware of any difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

58. *Injunctive Relief:* These putative Class members also satisfy the prerequisites of an injunctive relief class as all Class members, including Plaintiffs, were exposed to one or more of Defendant’s misrepresentations or omissions of material fact, as alleged herein. Due to the scope and extent of Defendant’s consistent false price-discounting advertising scheme, disseminated in a lengthy campaign to consumers, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Class. In addition, it can be reasonably presumed that all Class members, including Plaintiffs, affirmatively acted in response to the representations contained in Defendant’s false advertising scheme when purchasing merchandise from Defendant.

59. Defendant has acted or has refused to act on grounds that generally apply to each of the Class, such that final injunctive relief is appropriate as to the Class as a whole. Specifically, Defendant has continuously enforced a systematic and uniform policy of advertising misleading, untrue and illegal Reference Prices in violation of Wisconsin and California law, such that injunctive relief is necessary to avoid ongoing violations in the future.

60. Plaintiffs are informed that Defendant keeps extensive computerized records of its customers through, inter alia, customer loyalty programs, credit card programs, and general marketing programs. Defendant has one or more databases through which a significant number of Class members may be identified and ascertained, and it maintains contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

61. Alternatively, Plaintiffs will seek certification of particular issues under Fed. R. Civ. P. 23(c)(4).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Unlawful Practices in Violation of
### Wis. Stat. § 100.20 and Wis. Admin. Code ATCP 124

62. Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

63. Plaintiffs bring this claim individually and on behalf of the members of the Wisconsin Class against Defendant for violations of Wis. Stat. § 100.20 and ATCP 124.

64. Wis. Stat. § 100.20(1) provides: "[M]ethods of competition in business and trade practices in business shall be fair. Unfair methods of competition in business and unfair trade practices in business are hereby prohibited."

65. The Department of Agriculture, Trade and Consumer Protection is authorized under § 100.20(2) to "issue general orders forbidding methods of competition in business or trade practices in business which are determined by the department to be unfair." The rules and regulations governing the requirements for advertising price comparisons are set forth under ATCP 124, promulgated under the authority of Wis. Stat. § 100.20(2).

66. ATCP 124.01, entitled "Declaration of Policy," explains:

> Price comparison advertising is a form of advertising commonly used in the sale or offering for sale of consumer property or services whereby current prices are compared with former or future prices or other stated values to demonstrate price reductions or cost savings. While price comparisons accurately reflecting market values in the trade area provide consumers with useful information in making value comparisons and market buying decisions, price comparisons based on arbitrary or inflated prices or values can only serve to deceive or mislead. Further abuse occurs when sellers fail to disclose material information essential to consumer understanding of the comparisons made. The use of arbitrary or inflated price comparisons in violation of this rule as an inducement to the sale of consumer property or services is injurious to both the consuming public and competitors, and is an unfair trade practice and unfair method of competition under s. 100.20, Stats.

67. ATCP 124.03, entitled "Price comparison; general," provides, in part: "No price comparison may be made by a seller: (1) Based on a price other than one at which consumer property or services were sold or offered for sale by the seller or a competitor, or will be sold or offered for sale by the seller in the future, in the regular course of business in the trade area in which the price comparison is made."

68. ATCP 124.04, entitled "Seller's actual sale prices," provides:

> (1) No price comparison may be made by a seller based on a price at which consumer property or services were sold by the seller unless:
>
> > (a) The price is a price at which such property or services were actually sold by the seller in the last 90 days

immediately preceding the date on which the price comparison is stated in the advertisement; or

(b) The price is a price at which such property or services were actually sold by the seller during any other period, and the advertisement discloses with the price comparison the date, time or seasonal period when such sales were made.

(2) Notwithstanding sub. (1), no price comparison under this section may be made by a seller based on a price which exceeds the seller's cost plus the percentage markup regularly used by the seller in the actual sale of such property or services, or consumer property or services of similar class or kind, in the seller's recent and regular course of business.

69. ATCP 124.05, entitled "Seller's offered prices," provides:

(1) No price comparison may be made by a seller based on a price at which the seller has offered for sale but has not sold consumer property or services unless:

(a) The price is a price at which such property or services were actually offered for sale by the seller for at least 4 weeks during the last 90 days immediately preceding the date on which the price comparison is stated in the advertisement; or

(b) The price is a price at which such property or services were actually offered for sale by the seller for at least 4 weeks during any other 90-day period, and the advertisement clearly discloses the date, time, or seasonal period of such offer.

(2) Notwithstanding sub. (1), no price comparison may be made by a seller based on a price which exceeds the seller's cost plus the percentage markup regularly used by the seller in the actual sale of such property or services, or consumer property or services of similar class or kind, in the seller's recent and regular course of business.

70. Defendant's routine of advertising discounted prices from false Reference Prices constitutes an unfair trade practice and unfair method of competition in violation of Wis. Stat. §

100.20 and ATCP 124. Specifically, and as detailed above, Duluth rarely if ever offers its products at the higher Reference Prices, and it almost never actually sells products at those prices. The Reference Prices are not prices at which Duluth actually sold the products in the 90 days immediately preceding the advertisements, nor prices at which Duluth offered the products for sale for at least 4 weeks during those 90 days. Nor did Defendant's advertisements disclose the date, time, or seasonal period of any sales or offers at the Reference Prices. This deceptive marketing practice gave Wisconsin Plaintiff and other consumers the false impression that the products were regularly sold for a substantially higher price than they actually were, thereby leading to the false impression that the products sold by Defendant are worth more than they actually are.

71. The acts and practices of Duluth, as alleged herein, were likely to deceive consumers, and did deceive Wisconsin Plaintiff.

72. As a direct and proximate result of Defendant's misleading and unlawful price-comparison advertising, Wisconsin Plaintiff and the Wisconsin Class purchased from Duluth various consumer property, as defined by ATCP 124.02(2), for personal, family, or household purposes. Wisconsin Plaintiff and members of the Wisconsin Class were induced by Defendant's unlawful price comparisons to pay money for merchandise that they would not otherwise have purchased at those prices, did not receive the benefit of the bargain Defendant represented, and paid more for the products than the products' true market value absent Defendant's unlawful Reference Price representations, as alleged above. Wisconsin Plaintiff and Wisconsin Class members therefore suffered pecuniary loss because of Defendant's violations of ATCP 124.

73. Wisconsin Plaintiff and members of the Wisconsin Class are entitled to recover twice the amount of pecuniary loss suffered, together with costs, including reasonable attorneys' fees, under Wis. Stat. § 100.20(5). In addition, Wisconsin Plaintiff seeks a permanent injunction

as the Court may award under its equitable powers restraining Defendant from continuing to violate Wisconsin law through its price-comparison advertising scheme.

**SECOND CAUSE OF ACTION**

**Unjust enrichment (Alternative)**

74. Wisconsin Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

75. This claim is brought in the alternative to the First Cause of Action above. Wisconsin Plaintiff's purchases from Duluth were induced by Duluth's unlawful and misleading price comparisons. Any contract formed by those purchases is therefore voidable at the election of Wisconsin Plaintiff and members of the Wisconsin Class, who elect, in the alternative, to rescind those contracts, and no valid and enforceable contract governs the subject matter of this claim. To the extent the Court determines that Wis. Stat. § 100.20(5) does not afford Wisconsin Plaintiff and the Wisconsin Class a remedy for the loss alleged herein, they have no adequate remedy at law.

76. As a result of Defendant's false price-comparison advertising scheme, Duluth was unjustly enriched at the expense of Wisconsin Plaintiff and the Wisconsin Class who purchased from Duluth more products and/or paid higher prices than they would have absent the scheme.

77. Duluth retained the difference between the price Wisconsin Plaintiff and Wisconsin Class members paid and the true market value of the products as sold absent the unlawful Reference Price representations.

78. Duluth intentionally accepted, retained, and appreciated the money that Wisconsin Plaintiff and the Wisconsin Class spent purchasing products that were tainted and influenced by the false price comparison advertising scheme.

79. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Wisconsin Plaintiff and the

Wisconsin Class in light of the fact that the products that Wisconsin Plaintiff and the Wisconsin Class purchased from Duluth did not have the higher value or worth that Duluth represented they had through its false Reference Prices and were worth less than the amounts Wisconsin Plaintiff and the Wisconsin Class paid for them, and given that Wisconsin Plaintiff and the Wisconsin Class bought more products and/or paid more money than they would have absent the scheme.

**THIRD CAUSE OF ACTION**

**Violation of California's False Advertising Law**

**CAL. BUS. & PROF. CODE § 17500, et seq.**

80. California Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

81. California Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant for violations of California's FAL, Cal. Bus. & Prof. Code § 17500, et seq.

82. Cal. Bus. & Prof. Code § 17500 provides:

> It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of . . . personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that . . . personal property or those services . . . which is ***untrue or misleading***, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . .
> (emphasis added).

83. Cal. Bus. & Prof. Code § 17501 further provides:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if

> the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price … within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement.

84. Defendant's routine of advertising discounted prices from false Reference Prices, which were not the prevailing market prices of the products so advertised within the three months preceding the advertisements and were materially greater than the true prevailing prices (i.e., Defendant's average and/or most common actual sale price), constitutes an unfair, untrue, and misleading practice in violation of the FAL. This deceptive marketing practice gave California Plaintiff and other California consumers the false impression that the products were regularly sold on the market for a substantially higher price than they actually were; therefore, leading to the false impression that the products sold by Defendant are worth more than they actually are.

85. Upon information and belief, Duluth-branded merchandise is sold only by Duluth. As a result, the prevailing market price of that merchandise is the price at which Duluth actually sells it, which is usually the advertised sale price rather than the Reference Price. A Reference Price at which Defendant may list some colors or patterns of an item, but at which the item is rarely or never actually sold, is not a prevailing market price. Defendant's advertisements also did not clearly, exactly, and conspicuously state any date on which the Reference Prices prevailed.

86. Under all circumstances, California Plaintiff alleges that the Reference Prices are not the prevailing market prices as required under the FAL. That is because Defendant regularly sells its products, including the items purchased by California Plaintiff, at prices substantially lower than the advertised Reference Price, thereby establishing that its Reference Prices greatly

exceed the prevailing market price of its merchandise in violation of Cal. Bus. & Prof. Code § 17501.

87. As a direct and proximate result of Defendant's misleading and false advertisements, as well as Defendant's deceptive and unfair acts and practices made during the course of Defendant's business, California Plaintiff and members of the California Class did not receive the benefit of their bargain and suffered economic injury.

88. California Plaintiff, Donnie Gibson, on behalf of himself and the California Class, requests that this Court order Defendant to restore this money to California Plaintiff and the California Class, and to enjoin Defendant from continuing these unfair practices in violation of the FAL in the future. Otherwise, California Plaintiff, members of the California Class, and the broader general public will be irreparably harmed and/or denied an effective and complete remedy.

**FOURTH CAUSE OF ACTION**
**Violation of California's Unfair Competition Law**
**CAL. BUS. & PROF. CODE § 17200, et seq.**

89. California Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

90. California Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant for violations of the UCL, Cal. Bus. & Prof. Code § 17200, et seq.

91. The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

92. The UCL imposes strict liability. California Plaintiff and members of the proposed California Class need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

***"Unfair" Prong***

93. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

94. Defendant's actions constitute "unfair" business practices because, as alleged above, Defendant engaged in misleading and deceptive price comparison advertising that represented false Reference Prices and corresponding deeply discounted phantom "sale" prices. Defendant's acts and practices offended an established public policy of transparency in pricing, including regulations enacted by the FTC, and constituted immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

95. The harm emanating from this practice to California Plaintiff and members of the proposed California Class outweighs any utility it provides because Defendant's practice of advertising false discounts provides no utility. There were reasonably available alternatives to further Defendant's legitimate business interests other than the misleading and deceptive conduct described herein.

***"Fraudulent" Prong***

96. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

97. Defendant's acts and practices alleged above constitute fraudulent business acts or practices as Defendant has deceived California Plaintiff and members of the California Class and

is highly likely to deceive members of the consuming public. California Plaintiff and members of the California Class relied on Defendant's fraudulent and deceptive representations regarding its false Reference Prices for products sold by Defendant. These misrepresentations played a substantial role in California Plaintiffs and members of the proposed California Class's decisions to purchase products at a purportedly steep discount, and California Plaintiff would not have purchased products without Defendant's misrepresentations.

***"Unlawful" Prong***

98. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

99. Defendant's acts and practices alleged above constitute unlawful business acts or practices, as Defendant has violated state and federal law in connection with its deceptive pricing scheme. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements. Under the FTCA, false former pricing schemes, like Defendant's, are described as deceptive practices that would violate the FTCA:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious - ***for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one***; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price

> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $______"), unless substantial sales at that price were actually made. 16 C.F.R. § 233.1(a) and (b)
>
> (emphasis added).

100. As described in the Third Cause of Action above, Defendant violates the FAL because it advertises items, including the items that California Plaintiff purchased and are described herein, with a former price that greatly exceeds the prevailing market price of those items, and is therefore an "unlawful" act in violation of the UCL.

101. Defendant's practices, as set forth above, misled California Plaintiff, the California Class, and the public in the past and will continue to mislead them in the future. Consequently, Defendant's practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

102. Defendant's violations of the UCL, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat to California Plaintiff, members of the California Class, and the public who, if Defendant's false pricing scheme is permitted to continue, will continue to be deceived into purchasing products based on illegal price comparisons. These false price comparisons lead to artificial and increased demand, which, in turn, leads to higher prices and financial harm for consumers like California Plaintiff and the members of the California Class as described herein. Because of the surreptitious nature of Defendant's deception,

these injuries cannot be reasonably avoided and will continue to be suffered by the consuming public absent a mandated change in Defendant's practice.

103. Pursuant to Bus. & Prof. Code § 17203, California Plaintiff and members of the California Class are entitled to preliminary and permanent injunctive relief enjoining Defendant from continuing to engage in this unfair competition alleged above, as well as disgorgement and restitution to California Plaintiff and the California Class of all Defendant's revenues wrongfully obtained from them as a result of Defendant's unfair competition, or such portion of those revenues as the Court may find equitable. California Plaintiff and the California Class have no adequate remedy at law for the money so obtained, and seek restitution in the alternative.

**PRAYER FOR RELIEF**

104. Wherefore, Plaintiffs, on behalf of themselves and on behalf of the other members of the Classes, request that this Court award relief against Defendant as follows:

(a) an order certifying the Classes and designating Plaintiffs as the Representative of their respective Classes, and their counsel as Class Counsel;

(b) an order and judgment preliminarily and permanently enjoining Defendant from employing, utilizing, or otherwise publishing false, untrue, and misleading Reference Prices in violation of Wisconsin and California law;

(c) for Wisconsin Plaintiff and the Wisconsin Class, double actual damages pursuant to Wis. Stat. § 100.20(5);

(d) restitution and disgorgement of all ill-gotten gains and unjust enrichment that Defendant obtained from Plaintiffs and the Class members as a result of its business practices described herein;

(e) retaining jurisdiction to monitor Defendant's compliance with permanent injunctive relief;

(f) ordering Defendant to engage in a corrective advertising campaign;

(g) awarding attorneys' fees and costs pursuant to Wis. Stat. § 100.20(5) and Cal. Code Civ. Proc. § 1021.5;

(h) pre-judgment interest;

(i) post-judgment interest; and

(j) for such other and further relief as the Court may deem necessary or appropriate.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all claims and issues so triable.

Dated this 26th day of October, 2026.

**THE MARK SISSON LAW FIRM**
Attorneys for the Plaintiffs

*Electronically signed by Mark E. Sisson*
Mark E. Sisson (SBN: 1147034)

ADDRESS:
30200 Telegraph Rd. Suite 102
Bingham Farms, MI 48025
248-443-3022/ fax: 734-655-9045
msisson@marksissonlaw.com